UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LISA JOHNSON, F/K/A LISA RAMIREZ**,　　　　Civil Case No. 3:12-CV-01149-KI

　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER

　　　　v.

**CAROLYN W. COLVIN**, Acting Commissioner
of Social Security,

　　　　Defendant.


　　Merrill Schneider
　　Schneider Kerr Law Offices
　　P. O. Box 14490
　　Portland, Oregon  97293

　　　　Attorney for Plaintiff

　　S. Amanda Marshall
　　United States Attorney
　　District of Oregon

Page 1 - OPINION AND ORDER

>   Adrian L. Brown
>   United States Attorney's Office
>   1000 S.W. Third Ave., Suite 600
>   Portland, OR 97204
>
>   Jeffrey R. McClain
>   Social Security Administration
>   SSA Office of General Counsel
>   701 5th Avenue, Ste. 2900 M/S 221A
>   Seattle, Washington  98104
>
>   Kathy Reif
>   Social Security Administration
>   701 Fifth Avenue, Suite 2900, M/S 221A
>   Seattle, Washington  98104
>
>            Attorneys for Defendant

KING, Judge:

Plaintiff Lisa Johnson aka Ramirez[1] brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

---

[1] The claimant had married just before the administrative hearing and changed her name to Ramirez.  Most of her medical records use her prior name, Johnson, and I will do the same.

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Johnson had severe impairments of myofascial pain syndrome, dysthymia, a personality disorder, and degenerative disc disease of the cervical spine.  The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After considering the record, the ALJ found Johnson had the residual functional capacity to perform less than the full range of light work with the following restrictions:  (1) she would need to change positions between sitting and standing from time to time throughout the workday; (2) she should perform no more than occasional overhead reaching; (3) she should not climb ladders, ropes, or scaffolds; and (4) she is limited to unskilled and semi-skilled work.  Based on testimony from the vocational expert, the ALJ concluded Johnson could work as a food assembler or layaway clerk, and thus, was not disabled under the Act.

## FACTS

Johnson, who was 50 years old at the time of the ALJ's opinion, claims to have been disabled as of January 15, 2010.  Johnson has a GED and work experience as a caregiver, an accounts payable and receivable clerk, and a retail salesperson.

Johnson believes she is disabled due to constant pain in her neck that radiates into her upper back and down her arms.  Sitting or standing for any length of time increases the pain; Johnson has to shift position every ten to fifteen minutes.  She also gets headaches twice a week.

The pain started after Johnson suffered work-related falls in November 2008 and January 2009. Johnson treats the pain with physical therapy, chiropractic treatments, ibuprofen, a prescription muscle relaxant, and ice. She suffered side effects from several other prescription drugs. Every day or two, Johnson has to lie down during the day for one to two hours to ease the pain and fatigue.

In the Social Security application process, Johnson complained of anxiety and panic attacks, depression, mania, and trouble concentrating and remembering. At the hearing, Johnson denied having any mental health issues.

At the time of the hearing, Johnson was living with her new husband, Louis Ramirez, who helps her with many of the household chores.

## DISCUSSION

I.     Medical Opinions

Johnson argues the ALJ improperly rejected three medical opinions, those of examining physician Dr. Jacqueline Stoken, D.O., nonexamining state agency medical consultant Dr. Laura Griffith, D.O., and Johnson's treating chiropractor, Dr. L. Fenn Bourland.

The Commissioner contends the ALJ properly resolved the inconsistencies between the various medical opinions.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may

Page 6 - OPINION AND ORDER

only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

      A.      Dr. Jacqueline Stoken

In August 2010, Dr. Stoken, performed an independent medical evaluation on Johnson for her workers' compensation claim.  Dr. Stoken concluded Johnson should avoid repetitive bending, lifting, and twisting, along with a few other restrictions.  The ALJ gave the opinion "some weight" but concluded Johnson was more limited than determined by Dr. Stoken, particularly in her lifting ability.  Tr. 25.  The ALJ found the residual functional capacity better reflected the record as a whole, including other medical opinions and Johnson's activities of daily living.

Johnson argues that even though the ALJ limited her to lighter lifting than recommended by Dr. Stoken, the ALJ completely failed to explain his rejection of Dr. Stoken's postural limitations of avoiding repetitive bending, lifting, and twisting.  The only postural limitation in the ALJ's residual functional capacity was avoiding climbing ladders, ropes, or scaffolds.

The Commissioner notes Dr. Stoken's opinion is inconsistent with the opinion of Johnson's treating physician, Dr. Charles Mooney, M.D.  But Johnson points out the ALJ gave Dr. Mooney's opinion only some weight, identifying other records which show Johnson is more

Page 7 - OPINION AND ORDER

limited than determined by Dr. Mooney. Because the ALJ gave both Dr. Mooney's and Dr. Stoken's opinion some weight, Johnson contends it is disingenuous to argue the ALJ properly rejected Dr. Stoken's opinion in favor of Dr. Mooney's. Johnson also claims the ALJ did not use Dr. Mooney's opinion as a reason to reject Dr. Stoken's opinion, and that the Commissioner is engaging in post-hoc rationalization.

On March 3, 2010, Dr. Mooney, Johnson's treating physician for her workers' compensation claim, released her to "work in her usual occupation without restriction." Tr. 356. Because Dr. Mooney contradicts Dr. Stoken's opinion, the ALJ can only reject Dr. Stoken's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. I am unwilling, however, to assume the ALJ relied on Dr. Mooney's opinion when the ALJ did not give a specific reason stating as much.

The court cannot "affirm the decision of an agency on a ground the agency did not invoke in making its decision." Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation omitted). "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009).

Here, the ALJ's reason to discount part of Dr. Stoken's opinion is extremely broad and does not point to any particular piece of evidence. Moreover, as will be seen below, the ALJ relied on the same reasoning to reject parts of multiple doctors' opinions. The limited reasoning is insufficient to meet the standard of providing specific and legitimate reasons.

It is possible the two jobs the ALJ found Johnson could perform–food assembler and layaway clerk–do not require repetitive bending, lifting, and twisting, thus making the error harmless. However, there is neither evidence in the record nor argument from the Commissioner on which I could base that conclusion. Consequently, I find the ALJ did not properly reject Dr. Stoken's postural limitations.

B.  Dr. Laura Griffith

In March 2010, the state agency medical consultant, Dr. Laura Griffith, gave her opinion of Johnson's abilities based on an examination of the record. Another state agency medical consultant, Dr. John May, M.D., affirmed Dr. Griffith's opinion in May 2010. Dr. Griffith and Dr. May limited Johnson to occasional climbing of ramp/stairs/ladder/rope/scaffolds, balancing, stooping, kneeling, crouching, and crawling.

The ALJ gave the opinion "some weight" because it was generally consistent with the record as a whole. He also found the residual functional capacity better reflected the record as a whole, including other medical opinions and Johnson's activities of daily living. Tr. 24. This is the same analysis the ALJ gave for Dr. Stoken's opinion.

Johnson contends the ALJ improperly rejected Dr. Griffith's postural limitation in failing to reference specific evidence in the record to support the rejection.

The Commissioner again notes Dr. Griffith's opinion is inconsistent with the opinion of Johnson's treating physician, Dr. Mooney. Johnson again claims this is prohibited post-hoc rationalization because the ALJ never referred specifically to Dr. Mooney when analyzing Dr. Griffith's opinion.

The ALJ committed the same error with Dr. Griffith's opinion as he did with Dr. Stoken's opinion. Thus, I find the ALJ did not properly reject Dr. Griffith's postural limitations.

    C.    Dr. L. Fenn Bourland

Dr. Bourland, a chiropractor, had treated Johnson for two months when he gave an opinion of her status in June 2011. He found Johnson suffered from fibromyalgia, chronic pain, fatigue, and headaches. Dr. Bourland opined Johnson could occasionally lift up to ten pounds, frequently lift less than ten pounds, stand and/or walk at one time for 30 minutes, stand and/or walk for one hour in an eight-hour day, sit for two hours at a time, and sit for six hours during an eight-hour day. Dr. Bourland believed reclining and changing posture as needed throughout the day would allow Johnson to avoid the chronicity of pain that builds, and that she should never climb, balance, stoop, bend, kneel, crouch, crawl, or reach overhead and only occasionally reach to shoulder height. Dr. Bourland expected Johnson to miss two workdays or more a month due to her symptoms.

The ALJ gave Dr. Bourland's opinion little weight because a chiropractor is not an acceptable source for medical opinion evidence, the opinion was based primarily on Johnson's subjective reports, and the ALJ saw an inconsistency between Dr. Bourland's statement that Johnson was frequently incapacitated from household chores and her testimony at the hearing that she tidies the house, vacuums, and does some laundry and cooking. The ALJ again relied on his conclusion that the residual functional capacity better reflected the record as a whole, including other medical opinions and Johnson's activities of daily living.

Johnson argues the fact that a medical source is a chiropractor is not a sufficient reason for rejecting the opinion. She points out Dr. Bourland's progress notes state his findings which are not based on her subjective complaints. Johnson claims her testimony about housework is consistent with Dr. Bourland's opinion, when taken in context.

The Commissioner again argues Dr. Bourland's opinion is inconsistent with the opinion of Johnson's treating physician, Dr. Mooney. Johnson against contends this is improper post hoc rationalization. The ALJ did not mention Dr. Mooney's opinion specifically as a reason to discount Dr. Bourland's opinion, so I will ignore the reason in the analysis.

With respect to the ALJ's rejection of Dr. Bourland's opinion because he is a chiropractor, the Commissioner uses evidence from chiropractors, who are not acceptable medical sources under the regulations, to show the severity of a claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Acceptable medical sources are considered "the most qualified medical professionals[,]" but "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." SSR 06-03p. Thus, an ALJ cannot reject a chiropractor's opinion out of hand because the chiropractor is not a medical source. Accordingly, this reason alone is insufficient.

The ALJ was also concerned that Dr. Bourland's opinion was based primarily on Johnson's subjective reporting of her symptoms. His progress notes, however, contain his observations, including Johnson's range of motion measured in degrees, the location of tight and

tender fibers in her body, and the results of thermagraphic evaluations. Thus, the ALJ's reason is not supported by substantial evidence in the record.

The remaining reason the ALJ gave to reject Dr. Bourland's opinion is an inconsistency between Dr. Bourland's statement that Johnson was frequently incapacitated from household chores and Johnson's testimony at the hearing. Johnson testified her husband helps with a lot of the household chores because if she tidies or occasionally vacuums, she knows she will suffer with pain for the next day or two. At other times, Johnson stated she must break up chores, including washing a sink of dishes, into brief efforts separated by rest breaks. The ALJ's reason is a mischaracterization of the evidence.

In summary, the ALJ gave no reasons supported by substantial evidence in the record to reject Dr. Bourland's opinion.

II.     Lay Evidence

Johnson argues the ALJ improperly rejected the testimony of her husband, Louis Ramirez, and her friend and neighbor, Christine Winefeldt.

Ramirez testified at the hearing that Johnson would not be able to work full time, that she has to change positions frequently, that she does light housekeeping but he helps her with chores around the house, that she requires a lot of rest, and that her pain interferes with her ability to do anything, including playing cards, crocheting, and watching television, to the point they have to stop what they are doing most of the time to allow her to move around some.

Winefeldt completed a third party function report in 2010 after being Johnson's neighbor for two years. Winefeldt, who knew Johnson before she was disabled, spent time with her almost every day while they crocheted, watched television, and played cards. Winefeldt stated

Johnson could no longer stand for long periods of time or take long walks, had trouble sleeping, could not clean like she used to before her injury, and had memory and concentration problems because of the pain.

The ALJ considered the testimony from both lay witnesses but found that they were primarily based on Johnson's subjective reporting of symptoms. The ALJ then fell back on his repeated reason that the residual functional capacity better reflects the record as a whole including medical opinions and Johnson's activities of daily living, without giving more detail.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout, 454 F.3d at 1053. The germane reasons must also be specific. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record. Bruce, 557 F.3d at 1116.

"[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Johnson argues her husband's and Winefeldt's testimony is based on their daily observations of what she is able to do, and not on her reports of symptoms. Thus, she claims the ALJ's reason to reject Ramirez's testimony is inadequate.

The Commissioner again notes the opinions are inconsistent with the opinion of Johnson's treating physician, Dr. Mooney and the opinion of examining physician Dr. Arthur Konar, Ph.D.  The ALJ did not specifically give this reason, however, so I again will ignore it.

The lay witnesses testified about how Johnson spent her days and not about what Johnson told them.  Her husband observed her interrupting activities and shifting positions to ease pain "most all the time." Tr. 55.  Winefeldt testified about how Johnson no longer took part in several activities that the two used to share and had memory and concentration problems in activities she still attempted.  The testimony from both witnesses contains observations which the ALJ did not give germane reasons to discount.  Accordingly, I find the ALJ did not properly reject the lay testimony from Ramirez and Winefeldt.

III.     Residual Functional Capacity

Johnson argues the ALJ must assess her residual functional capacity by first identifying her functional limitations and assessing her work-related abilities on a function-by-function basis.  Johnson claims the ALJ improperly assessed her residual functional capacity by failing to make findings about her lifting and carrying ability, the frequency she needs to alternate between sitting and standing, and the length of time she can engage in either sitting or standing during the day.

The ALJ limited Johnson to less than the full range of light work with some nonlifting limitations.  The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Because the ALJ put no further limitations on Johnson's lifting and carrying, this definition adequately states her ability.

The regulations further define light work as requiring six hours total of standing or walking in a workday. SSR 83-10. A person capable of light work is also capable of sedentary work, 20 C.F.R. § 404.1567(b), and sedentary work requires the ability to sit for six hours in a workday. SSR 83-10. This adequately specifies the length of time Johnson can sit or stand during the workday.

The ALJ found Johnson would have to change positions between sitting and standing "from time to time throughout the workday." Tr. 21. Johnson argues this description is so vague that the vocational expert may not have interpreted it in the same manner as the ALJ. At the hearing, the ALJ gave the vocational expert a hypothetical with the person needing to shift positions occasionally from sitting to standing. "Occasionally" is defined to mean from very little up to one-third of the time. SSR 85-15. This limitation would be crystal clear to the vocational expert, but it is not the same limitation the ALJ stated in the written opinion, which uses the colloquial phrase "from time to time." The ALJ's conclusions are in the written opinion, not in the numerous hypotheticals typically given to the vocational expert. As an example, the ALJ gave one hypothetical with the person limited to occasional interaction with the public, but the ALJ did not include this limitation in the written residual functional capacity. I agree with Johnson that the ALJ did not adequately phrase the limitation covering the frequency Johnson needed to change position.

Johnson further contends the ALJ's limitation to unskilled and semi-skilled work is inadequate because the limitation is not a quantification of function. She claims the ALJ failed to address any of the actual work functions specified in 20 C.F.R. § 404.1545(c).

Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).  Semi-skilled work "needs some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; . . . or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work."  Id. § 404.1568(b).

These descriptions, however, do not address all mental aspects of performing a job.  For example, when determining the residual functional capacity, a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."  Id. § 404.1545(c).  Moreover, "because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job."  SSR 85-15.  The ALJ found Johnson had moderate difficulties with regard to concentration, persistence, or pace, Tr. 21, but did not include any limitations in her residual functional capacity to address the issue.  I find the ALJ's limitation to unskilled or semi-skilled work fails to address some of the mental limitations supported by substantial evidence and found by the ALJ.

IV.     Remedy

The ALJ made errors in analyzing medical opinions, lay opinions, and formulating Johnson's residual functional capacity.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule is mandatory or discretionary but not resolving the conflict). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Connett, 340 F.3d at 876. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

There are numerous issues for the ALJ to resolve. I do not find this the unusual case in which it is clear the ALJ must find Johnson disabled. Consequently, I will remand the action to allow the ALJ to correct the errors.

**CONCLUSION**

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this      18th       day of June, 2013.

                                             /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge